# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

UNITED STATES OF AMERICA      CRIMINAL NO. 2:16-cr-00003 – KS - MTP

VERSUS

KENNETH E. FAIRLEY

## MEMORANDUM IN SUPPORT OF
## KENNETH E. FAIRLEY'S MOTION FOR BAIL PENDING APPEAL

                         Herbert V. Larson, Jr. (La. Bar No. 8052)
                         700 Camp Street
                         New Orleans, LA 70130
                         (504) 528-9500
                         hvl@hvllaw.com

                         Counsel *pro hac vice* for
                         Kenneth E. Fairley

                         Arnold A. Spencer
                         Spencer & Associates
                         500 Main Street, Suite 1040
                         Fort Worth, Texas  76102
                         (214) 385-8500

                         Counsel *pro hac vice* for
                         Kenneth E. Fairley

                         Sanford Knott
                         Sanford Knott & Associates
                         MSB #8477
                         P.O. Box 1208
                         Jackson, MS  39215
                         601-355-2000

                         Counsel for
                         Kenneth E. Fairley

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................... 3

    A.      THE LEGAL STANDARD FOR BAIL PENDING APPEAL. ................................... 4

    B.      THE LEGAL STANDARD AS APPLIED TO THE FACTS OF THIS CASE. ........... 6

        1.    Pastor Fairley is not a flight risk. ................................................................... 6

        2.    The substantial questions of law and fact. ..................................................... 7

            a.     The *Crawford* issue. ............................................................................... 7

            b.     The improper testimony and the absence of jury instructions regarding the correct legal standard for appropriate uses of HUD CDHO "set-aside funds." .............. 8

            c.     The sentencing issues ...................................................................... 10

    C.      CONCLUSION. ........................................................................................................ 13

CERTIFICATE OF SERVICE ............................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Crawford v. Washington*, 541 U.S. 36 (2004) ................................................................... 7

*United States v. Clark*,
   917 F.2d 177 (5th Cir. 1990) ........................................................................................ 6

*United States v. Cornett*, 195 F.3d 776 (5th Cir. 1999) ..................................................... 8

*United States v. Giancola*,
   754 F.2d 898 (11th Cir. 1985) ...................................................................................... 5

*United States v. Means*, 695 F.2d, 811 (5th Cir. 1983) ..................................................... 8

*United States v. Miller*,
   753 F.2d 19 (3rd Cir. 1985) ..................................................................................... 5, 6

*United States v. Olivares*, 833 F.3d 450 (5th Cir. 2016) ................................................. 10

*United States v. Valera-Elizondo*,
   761 F.2d 1020 (5th Cir. 1985) ................................................................................. 5, 6

*United States v. Zuniga*, 720 F.3d 587 (5th Cir. 2013) ................................................... 12

**Statutes**

18 U.S.C. § 3143(b) ............................................................................................................ 4

**Rules**

Fed. R. Crim. P. 16(a)(1)(A) ............................................................................................ 16

**MAY IT PLEASE THE COURT:**

Kenneth E. Fairley, a long-time resident of Hattiesburg, has successfully complied with his bail obligations for almost a year now. He poses no risk of flight or risk of danger to himself or others. His appeal, filed not for the purpose of delay, but so that justice may be done, will raise substantial questions of law and fact. Each and every one of those substantial questions, if decided in Pastor Fairley's favor, would result in acquittal, or in an order for new trial. Moreover, Pastor Fairley has raised substantial questions regarding his sentence, which, if decided in his favor, would result in a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.[1] Accordingly, bail pending appeal should be granted.

**A. THE LEGAL STANDARD FOR BAIL PENDING APPEAL.**

Applications for bail pending appeal are governed by 18 U.S.C. § 3143(b), which creates a presumption against such bail. The statute does not eliminate bail pending appeal, but instead limits its availability to defendants who can meet its criteria. A defendant who seeks bail pending appeal must show that:

(1) he is not a flight risk;
(2) he is not likely to pose a danger to any other person or the community if released;
(3) the appeal is not for purpose of delay; and
(4) the appeal raises a substantial question of law or fact likely to result in –
    (i) reversal
    (ii) an order for new trial,
    (iii) a sentence that does not include a term of imprisonment, or
    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.[2]

---

[1] Based on counsel's most recent appeal to the Fifth Circuit, it is reasonable to expect that the duration of the appeal process will be approximately 12 - 14 months. *See, e.g., In re: William L. Goode*, 821 F.3d 553 (5th Cir. 2016) – notice of appeal filed 2/20/15; oral argument heard 2/3/2016; opinion issued on 4/18/2016.

[2] 18 U.S.C. § 3143(b).

4

Of these four criteria, only the fourth, that "the appeal raises a substantial question of law or fact," requires reference to the case law for interpretation.

In the Fifth Circuit, that interpretation is provided in *United States v. Valera-Elizondo*, 761 F.2d 1020, 1025 (5th Cir. 1985). The *Valera-Elizondo* court stated that:

> This Court adopts the *Miller* interpretation of section 3143(b), subject to the *Giancola* Court's and this Court's additional observations on the definition of a "substantial question." In addition, we assign to "likely" its ordinary meaning of "more probable than not."[3]

The *Miller* interpretation of "substantial question" is straightforward: it is "a question that is ***either*** novel, which has not been decided by controlling precedent, ***or*** which is fairly doubtful. Secondly, [to find a substantial question] the court must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial."[4]

The *Valera-Elizondo* Court explained the Eleventh Circuit's "additional observations" on the definition of "substantial question" as follows:

> The *Giancola* Court noted that the lack of controlling precedent may in some instances be indicative of only that the issue is so patently frivolous that it has not been found necessary for it to have been resolved. The Eleventh Circuit would thus define a "substantial question" as one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way. Further, whether a question is substantial must be determined on a case-by-case basis.[5]

The Fifth Circuit further commented: "We would add our observation that 'substantial question' means that the issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution."[6]

---

[3] *Valera-Elizondo,* 761 F.2d at 1025 (*discussing United States v. Miller*, 753 F.2d 19 (3rd Cir. 1985) *and United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985)).
[4] *Valera-Elizondo*, 761 F.2d at 1023 (emphasis added).
[5] *Id.* at 1023-24 (internal citations and quotation marks omitted).
[6] *See id*. at 1024.

This standard, however, ***does not*** mean that this Court must find that it is likely to be reversed on appeal:

> [W]e are unwilling to attribute to Congress the cynicism that would underlie the provision were it to be read as requiring the district court to determine the likelihood of its own error. A district judge who, on reflection, concludes that s/he erred may rectify that error when ruling on post-trial motions. Judges do not knowingly leave substantial errors uncorrected, or deliberately misconstrue applicable precedent. Thus, it would have been capricious of Congress to have conditioned bail only on the willingness of a trial judge to certify his or her own error.[7]

**B. THE LEGAL STANDARD AS APPLIED TO THE FACTS OF THIS CASE.**

*1. Pastor Fairley is not a flight risk.*

Counsel for Pastor Fairley hope that the Court shares their belief that the only question before the Court is whether Pastor Fairley's appeal will raise a "substantial issue of law or fact likely to result in [relief]." The evidence showing that Pastor Fairley is not a flight risk will be addressed, nonetheless.

As the Court both explicitly and implicitly concluded when it released Pastor Fairley on an unsecured bond pending his trial, on bail following his conviction, and on bail for an additional sixty days following his sentencing, he is not likely to flee, or to pose a danger to the safety of any other person, or to the community. These conclusions are supported by Pastor Fairley's continued compliance with the conditions of his release.

Pastor Fairley has complied with all the conditions of his release since they were ordered on March 23, 2016.[8] Those conditions required Pastor Fairley to: appear at all proceedings as required—which he has; surrender his passport—which he has; meet regularly with his supervising officer—which he has; and confine his travel to the Southern District of Mississippi, unless

---

[7] *See id.* at 1022-23 (*quoting Miller*, 753 F.2d at 23); *see also United States v. Clark*, 917 F.2d 177, 180 (5th Cir. 1990) (expressly adopting the *Valera-Elizondo* standard).
[8] *See* Rec. Doc. 21.

advance approval is received—which he has. As U.S.P.O. Jason Alexis testified at the sentencing hearing, "[Pastor Fairley] has been compliant while he's been on pretrial supervision.[9]

### 2. *The substantial questions of law and fact.*

This appeal is not for the purpose of delay. This criminal prosecution has been devastating in its impact upon Pastor Fairley and his family, emotionally, financially, and professionally, and is something he certainly has no wish to prolong. However, he also has no desire to begin serving a prison sentence for a conviction that is subject to reversal, or a conviction for which the correct sentence falls into a sentencing range that would permit a sentence of probation. The factors that could result in a reversal of Pastor Fairley's conviction, or a remand for resentencing, are addressed below.

There are at least three substantial questions of law that Pastor Fairley may address in his appeal – two that directly relate to the trial, and one "group" of questions that relate to sentencing. Because this request is made at the beginning of the appellate process, Pastor Fairley's issues on appeal are still being researched and formulated. Some of these arguments may not be raised on appeal, or there may be arguments not addressed below that will be raised.

### a. **The *Crawford* issue.**

The Court is well aware of the *Crawford* [10] issue, having addressed it in post-trial motions. During trial, the Court admitted into evidence certain recordings made by the co-defendant, Artie Fletcher, and a lawsuit drafted and filed by him, over the objections of counsel. Specifically, Pastor Fairley objected that the out-of-court statements were recordings that were made by the alleged co-conspirator were neither (i) in the course of the conspiracy, nor (ii) in furtherance of the

---

9    Transcript of Sentencing, 12/19/2016, pp. 168-169.
10   *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

7

conspiracy, and that these things violated his Sixth Amendment right to confront his accusers. The Court overruled the objection and admitted the recordings and the lawsuit into evidence. Now, with the benefit of reviewing the entire recorded conversations and the additional evidence showing that these recordings were made in December 2012, it is clear that there is a substantial question of law as to whether this Court should have ruled as it did.

The law of the Fifth Circuit is clear: such statements do not fall within the co-conspirator exception to the hearsay rule. See *United States v. Cornett*, 195 F.3d 776, 784 (5th Cir. 1999). "Mere idle chatter", even if prejudicial and made among co-conspirators, is not admissible under Rule 801(d)(2)(e). *Id.* at 784; and *United States v. Means*, 695 F.2d, 811, 818 (5th Cir. 1983). Given the prominent role that these recordings played at trial, this will unquestionably be a substantial issue for the Court of Appeals.

As noted above, this Court does not need to believe that it was "wrong" in its ruling on the *Crawford* issue. It only needs to acknowledge that the issue is a genuine one, an issue on which reasonable jurists could disagree about the outcome.

   b.  **The improper testimony and the absence of jury instructions regarding the correct legal standard for appropriate uses of HUD CDHO "set-aside funds."**

This issue, like the preceding issue, will be familiar to the Court, because it was also raised in post-trial motions. As the Court will recall, IRS Special Agent Luker testified on cross-examination that none of the $98,000 of the HUD CHDO Set-Aside funds could be used to pay for Pinebelt's overhead. This testimony regarding the HUD regulations was wholly incorrect and misleading. In fact, HOME Funds (the very funds which were granted to the City of Hattiesburg, and in turn, granted to Pinebelt) can be used to pay for a CHDO's overhead. *See* 24 CFR Part 92.206(d), Part 92.208 and Part 300(f) (specifically stating that CHDOs may receive HOME funds

for the CHDO's operating expenses). Many official HUD publications delineate and re-enforce this rule: HOME funds can be used to pay for CHDO operating expenses. Indeed, as shown by Defendant Fairley's Exhibit 39, the contract between the City of Hattiesburg and Pinebelt specifically included a budget, agreed to by both parties, which included a proposed expenditure of funds for Pinebelt's operating expenses, salaries and benefits as line items. Special Agent Luker's sworn testimony, that HOME funds could only be used for direct expenditures, was wrong and misleading. His testimony that HOME funds could not be used for Pinebelt's operating expenses was also wrong and misleading.

The objections to Special Agent Luker's testimony that he lacked a foundation or basis for his testimony should have been sustained, and the Court should have instructed the jury regarding the correct interpretation of the law. Instead, the Court allowed Special Agent Luker to testify to an incorrect interpretation of the law, and never corrected the testimony for the jury by means of a jury charge that correctly stated the law. If a jury understood that Pinebelt was allowed to use HOME funds for operating expenses as a matter of law, then no reasonable jury could have found Pastor Fairley guilty on Counts One, Two or Three.

The defendant's accounting witness, Brent McDaniel, testified that once operating expenses were included in the investigation, that no funds were diverted or stolen, and that approximately $135,000 was spent by Pinebelt in rehabilitating the two homes in question. The government presented no counter-testimony or cross-examination that rebutted these facts. Therefore, the only evidence in the record indicates that Pinebelt spent far in excess of the $98,000 of HOME funds allocated for these projects. No reasonable, properly-instructed jury could have found that the HOME funds were stolen or diverted from HUD.

Again, Pastor Fairley is not asking this Court to concede error—just the possibility that if error was committed, it was substantial. A set of rulings that improperly admitted incorrect testimony as to the law, coupled with a failure to instruct the jury as to the correct law, meets the definition of substantial error.

    **c.    The sentencing issues**

Although many of the factors that went into the calculation of Pastor Fairley's sentence were contested, only three aspects of his sentencing need be addressed here: (1) the burden of proof for enhancement factors; (2) the inclusion of "the second Pinebelt contract" in the "loss" computation; and (3) the Court's determination that it need not credit the fair market value of the properties at issue against the ultimate loss calculation. As the Court is aware, a decision in Pastor Fairley's favor on <u>any one</u> of these factors will result in a remand for resentencing, and at that resentencing, Pastor Fairley will be in a "range" that will include the possibility of probation, even absent a downward departure.[11]

First, Pastor Fairley submits that it was error not to require the Government to prove the sentencing enhancements to the offenses of conviction. The law on this point is clear: the Government has the burden to prove, by a preponderance of the evidence, the facts which are necessary to support any sentencing enhancement. *See, e.g., United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016). While the Government is certainly entitled to rely on evidence offered <u>at</u>

---

[11]     If the Court of Appeals determines that the Government did not carry its burden of proof regarding the enhancement factors, then the losses attributable to Pastor Fairley are $60,223 – i.e., the "losses" proved at trial without any benefit of a reduction for fair market value. A loss figure of $60,223, and a criminal history of Category 1, results in guidelines of 10-16 months, in Zone C, which permits the imposition of a sentence of probation, coupled with home confinement, or residence in a half-way house, assuming no other reductions. The same guidelines range would be obtained if the "intended loss" is removed. And if the fair market value of the properties is considered, the result is even more favorable to Pastor Fairley: his guidelines range would be 0-6 months.

trial to support the sentences imposed on the convictions, the Government confuses the offenses of conviction with relevant conduct. When one goes beyond the core offenses – as was done in this case – the trial evidence is of no moment, because it has nothing to do with the enhancements being sought. Pastor Fairley was not tried for, nor convicted of "the second contract," so pointing to the evidence at trial does the Government no good. It needed to come forward with some evidence of fraud vis-à-vis the second contract – and it did not.

Moreover, the Court's reliance on the PSR as sufficient "evidence" is misplaced under Fifth Circuit law.[12] Once an objection has been made, and any evidence has been offered in support of that objection, the Court must engage in fact-finding. The principle was recently explained by the Fifth Circuit in *United States v. Zuniga*:

> When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris,* 702 F.3d 226, 230 (5th Cir.2012) (internal quotation marks and citation omitted). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *Id.* (internal quotation marks and citation omitted). **However, "[b]ald, conclusionary statements" in a PSR are not sufficiently reliable**. *See id.* at 230 n. 2 (quoting *United States v. Elwood,* 999 F.2d 814, 817–18 (5th Cir.1993)). **"If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence**." *See id.* at 231.
>
> But if the factual recitation in the PSR bears sufficient indicia of reliability, then the "defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *United States v. Ollison,* 555 F.3d 152, 164 (5th Cir.2009) (citation and internal quotation marks omitted); *see also United States v. Ayala,* 47 F.3d 688, 690 (5th Cir.1995) (confirming that "in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it"). *United States v. Vital*, 68 F.3d 114, 120 (5th Cir.1995). Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable." *Harris,* 702 F.3d at 230.

---

[12] The Court specifically stated: "The PSR is evidence. It's evidence before the court today." Sentencing Transcript, 12/19/2017, p.49.

*United States v. Zuniga*, 720 F.3d 587, 590–91 (5th Cir. 2013)(emphasis added).

Here, the "factual recitation" in the PSR consisted of nothing more than the speculation that Pastor Fairley, if the second contract had been granted, would have acted criminally in that instance as well. Speculation piled onto a hypothetical cannot, under any circumstances, be considered evidence with any indicia of reliability. Moreover, the USPO's speculation was not only rebutted, it was destroyed by evidence produced at the sentencing hearing. This evidence, which consisted of a November 30, 2011 letter from HUD to the City of Hattiesburg that effectively voided all extant contracts, including the one for which the USPO imposed this $118,000 loss enhancement, was evidence of which the USPO was unaware:

> Q. (BY MR. SPENCER) Were you aware, separate and apart from the letters, that HUD was critical of the way the Pinebelt was running the HOME program? I'm sorry. Were you aware that HUD was critical of the way that the City of Hattiesburg was running the HOME program?
>
> A. (BY USPO ALEXIS) No, I was not.
>
> Q. The city was the participating jurisdiction; correct?
>
> A. Yes, I believe they administered the funds.
>
> Q. Okay. So you weren't aware that on November 30th that – November 30th, 2011, that HUD effectively voided all of the contracts that HUD had approved by the City of Hattiesburg?
>
> A. I was not aware.
>
> Q. Okay. Did HUD ever go forward on funding this October 2011 contract?
>
> A. Not to my knowledge.
>
> Q. Did the City of Hattiesburg ever go forward on funding this contract?

A. Not to my knowledge.

Sentencing transcript, p. 89 (12/19/2019).

Plainly, this enhancement never should have been imposed.

And finally, the United States Sentencing Guidelines make it abundantly clear that in calculating "losses" for economic offenses using § 2B1.1 of those Guidelines, "loss" must be reduced by "the fair market value of the property returned and services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." Application note 3(E), U.S.S.G. § 2 B1.1. Here, there was credible evidence offered at sentencing that the fair market value of the properties in question was substantial – and would more than offset the losses in question. The Court disregarded that evidence in its entirety, with no reason for doing so being given, other than "I still don't think that the value is relevant to the – to what the court is doing here today, but be that as it may, it's a proffer." If this was error, and counsel for Pastor Fairley believe it was, based on the Application note cited above, it was unquestionably substantial error – because it lowers the potential sentence in this case to one that does not require incarceration.

**C. CONCLUSION.**

Requests for bail pending appeal are made at the beginning of the appellate process, at a time when the arguments that will be presented in the appeal are still being researched and formulated. Some of the arguments presented above will not be presented to the Court of Appeals. There may be arguments not presented above that will be made. But as set out above, this is a case in which there are arguments that raise serious, substantial legal issues. If any one of those issues is decided in Pastor Fairley's favor, there will be either a new trial in this case, or a remand for

resentencing. In such circumstances, bail pending appeal is not merely appropriate, it is compelled.

Respectfully submitted, this 23rdth day of January, 2017.

        Respectfully submitted,

        */s/Herbert V. Larson, Jr.*
        Herbert V. Larson, Jr. (La. Bar No. 8052)
        700 Camp Street
        New Orleans, LA 70130
        (504) 528-9500
        hvl@hvllaw.com

        Counsel *pro hac vice* for
        Kenneth E. Fairley

        */s/ Arnold A. Spencer*
        Arnold A. Spencer
        Spencer & Associates
        500 Main Street, Suite 1040
        Fort Worth, Texas 76102
        (214) 385-8500

        Counsel *pro hac vice* for
        Kenneth E. Fairley

        */s/ Sanford Knott*
        Sanford Knott
        Sanford Knott & Associates
        MSB #8477
        P.O. Box 1208
        Jackson, MS 39215
        601-355-2000

        Counsel for
        Kenneth E. Fairley

## CERTIFICATE OF SERVICE

This certifies that I electronically filed the foregoing Motion for Bail Pending Appeal with the Clerk of Court by using the CM/ECF system, thereby sending a notice of electronic filing to the appropriate counsel of record.

Date: January 24, 2017.

*/s/Herbert V. Larson, Jr.*
HERBERT V. LARSON, JR.