IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                                                             Criminal No. 2:16cr3KS-MTP

KENNETH E. FAIRLEY

## RESPONSE TO MOTION FOR BAIL PENDING APPEAL

The United States of America, by and through the undersigned Assistant United States Attorney, files this response in opposition to defendant Kenneth E. Fairley's motion for bail pending appeal (ECF #112) and in response thereto states as follows:

### BACKGROUND

In March 2016, defendant Fairley was indicted in a multi-count indictment along with a co-defendant, Artie Fletcher. ECF #3.  Fletcher pleaded guilty four days before trial to a separate criminal felony information. *See United States v. Fletcher*, No. 2:16cr16 (S.D. Miss.).

Before the trial began, and without objection by the defense, the government dismissed Counts 4, 5, and 6 of the instant indictment. ECF #65.  Thus, the only charges Fairley faced at trial were the first three counts of the indictment.  Count 1 charged Fairley with conspiring with Artie Fletcher to commit an offense against the United States, namely, theft of government money in violation of Title 18, United States Code, Section 641, all in violation of Title 18, United States Code, Section 371. ECF #3.   In

Counts 2 and 3, Fairley was charged with substantive counts of violating Title 18, United States Code, Section 641. *Id.*

All three counts related to activity Fairley undertook as the head of Pinebelt Community Services ("Pinebelt"), a Community Housing Development Organization ("CHDO"), which contracted on a cost-reimbursement basis with the City of Hattiesburg to perform rehabilitation work in connection to two properties in Hattiesburg. The money was ultimately made available to the city by Housing and Urban Development ("HUD") and as such constituted federal money within the meaning of Title 18, United States Code, Section 641. *See* ECF #3; PSR ¶¶19-85.

The allegations contained in the indictment adequately set out the contours of the overall conspiracy and identify with sufficient specificity both the objects and overt acts of the indictment and the scope and parameters of the conspiracy which began in August 2010 and continued through on or about December 12, 2012. *See* ECF #3.  Following a six-day trial, the jury unanimously found the defendant guilty on all three counts. *See* 9/12/16 Docket entry.

In its presentence report, the Probation Office determined that defendant Fairley was subject to a base offense level of 20 and should be held accountable for a two-level role adjustment for abuse of a position of trust, for a total offense level of 22. PSR ¶¶93-101.  Given his criminal history category of I, Fairley's Sentencing Guidelines range was 41 to 51 months. *Id.* ¶¶104, 130.  Fairley's counsel objected to various aspects of the presentence report that were addressed in the Probation Office's addendum. *See* PSR Addendum.  At sentencing, the Court reduced Fairley's offense level by two, to give him

a credit against the loss amount (revising the loss amount to more than $95,000 but less than $150,000), resulting in a sentencing range of 33 to 41 months.

As a result of the sentencing proceedings, this Court determined to sentence defendant Fairley to 36 months of imprisonment as to each count, to run concurrently. *See* 12/19/16 Docket entry; ECF #108 (judgment).  Fairley was also ordered to serve three years of supervised release and to pay a $30,000 fine and $60,224 in restitution. *Id*.

Defendant Fairley is due to report to the Bureau of Prisons to begin serving his sentence on February 9, 2017. ECF #118.  Defendant Fairley has filed his notice of appeal and now moves this Court to be permitted to remain on bond pending appeal. ECF ##109, 112.  For the reasons stated herein, the Government opposes the motion.

## APPLICABLE STANDARDS

A defendant who has been convicted and sentenced for a federal crime has no constitutional right to be released on bond. *See United States v. Williams,* 822 F.2d 512, 517 (5th Cir. 1987) (citing *United States v. Bright,* 541 F.2d 471, 477 (5th Cir. 1976), *cert. denied,* 430 U.S. 935 (1977)).  The only basis for such relief is if the defendant satisfies the statutory requirements for release on bond.  Under federal law, there is a presumption against granting a defendant bail after conviction and sentencing. *See id.;* 18 U.S.C. § 3143(b).

To obtain bail pending appeal, the convicted defendant must prove by clear and convincing evidence each of the following four factors: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a

...

...

...

substantial question of law or fact; *and* (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Valera–Elizondo,* 761 F.2d 1020, 1025 (5th Cir.1985) (emphasis added).[1]  A question of law or fact is "substantial" if it raises a substantial doubt and could "very well be decided the other way" by the Court of Appeals. *See United States v. Clark,* 917 F.2d 177, 180 (5th Cir. 1990). *See United States v. Castle*, 2007 WL 1098489 (S.D. Miss. 2007) (denying motion for bail pending appeal).

## DISCUSSION

Fairley is unable to carry his burden of establishing all four factors by clear and convincing evidence.  While there is no reason to believe Fairley is "likely to flee or pose a danger to the safety of any other person or the community" or that his appeal is "for purpose of delay," *Valera–Elizondo,* 761 F.2d at 1025, he must also show his "appeal raises a substantial question of law or fact" that is "likely to result in—(i) reversal, (ii) an order for a new trial, (iii)  a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). Fairley is unable to make such a showing.

---

[1] After the Fifth Circuit's decision in *Valera–Elizondo*, Congress amended the Bail Reform Act to expand the fourth factor to include decisions that are likely to result in "a sentence that does not include a term of imprisonment, or ... a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B) (as amended Nov. 29, 1990, 104 Stat. 4826, 4827). *See United States v. Pruett,* 2011 WL 2894631, at *3 (W.D. La. 2011).

Fairley has raised three issues he argues pose a sufficiently substantial question as to warrant bail pending appeal, namely, (1) this Court's admission of evidence that should have been barred by *Crawford*, (2) the handling of the issue of set-aside funds, and (3) the sentencing of Fairley. ECF #120 at 7-13.  None of these proposed issues is sufficient to satisfy his burden in this case:

> **1. This Court Properly Determined that the Challenged Evidence Was Not Barred by *Crawford***

As Fairley points out, the Court admitted into evidence certain recordings that his co-defendant, Artie Fletcher, made of their conversations, as well as a lawsuit Fletcher drafted and filed. ECF #120 at 7.  Fairley challenges these rulings as violative of *Crawford*. *Id.* at 7-8. *See Crawford v Washington*, 541 U.S. 36 (2004).  Fairley is mistaken in his understanding of the legal basis for the admission during trial of the recordings and civil complaint.  *Crawford* is no bar to the admissibility of such evidence. The recorded statements were made between Fletcher and Fairley at a time when both defendants were attempting to acquire HUD funds in an effort to "reimburse" Fletcher for work he knew had not been done and had yet to be completed.  As this Court properly noted, the recordings were made during the time period alleged in the indictment. ECF #90 at 2.

The categorical rule adopted by *Crawford* is triggered only with respect to "testimonial" evidence; thus, whether a challenged statement falls within the class of evidence deemed "testimonial" will generally be outcome-determinative.  But *Crawford* declined to "spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at

68. Instead, the Court held that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* Beyond these specific examples, however, the boundaries of testimonial evidence remain unsettled. The Court quoted three potential formulations of the "core class" of testimonial statements but declined to adopt or reject any of them.

Significantly: "Statements made by a co-conspirator during the course and in furtherance of a conspiracy are by their nature generally ***non***testimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination." *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005) (emphasis added). *See also United States v. King*, 541 F.3d 1143, 1145-46 (5th Cir. 2008) ("[s]tatements made between co-conspirators in furtherance of a conspiracy are not testimonial") (citing *Crawford*, 541 U.S. at 56). Fletcher made these recordings during and in furtherance of the conspiracy—for the sole purpose of ensuring that he would be able to acquire funds he felt he was owed as a consequence of their conspiratorial activity, even though he acknowledged not having done any work on the homes. The recordings include Fairley telling Fletcher about how he would work with others to try to conceal the conduct, how he had been required to find receipts that could be used for this purpose. There is discussion about Fairley asking Fletcher if he had any additional receipts to help cover up what was done in order to provide those documents for HUD. Receipts were admitted into evidence that were manufactured and some photocopied multiple times.

6

In its post-trial ruling, this Court observed that the challenged "conversations involve many things related to the conspiracy, including but not limited to, efforts to file documents to adequately document alleged work done on the project, including allowing Fairley to sign Fletcher's name, attempts by Fletcher to be repaid 'seed money' put into the project and other general topics of conversation, most of which surround the conspiracy." ECF # 90 at 2.

The conversations were in furtherance of the conspiracy because they discuss how Fairley and Fletcher would proceed in an attempt to cover up their diversion of funds, stay out of jail, and be able to move forward on other projects.  Therefore, these statements contained within the recordings are more than "mere idle chatter" among coconspirators (ECF #120 at 8), but reflect their attempt to further their conspiracy, including determining how they will be able to proceed on the additional property they were scheduled to work on under the HUD grant provided by the city.

As the Fifth Circuit has said: "It is well-settled that a statement made among conspirators for the purpose of describing proper sources, avenues or conduits to promote the conspiracy is 'in furtherance' for purposes of Rule 801(d)(2)(e)." *United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999). *See United States v. Lechuga,* 888 F.2d 1472, 1480 (5th Cir. 1989) (reference to source of the drugs in question was in furtherance of the conspiracy).  As the Fifth Circuit also has said, the "in furtherance" requirement "is not to be construed too strictly lest the purpose of the exception be defeated." *Cornett*, 195 F.3d at 782.  This Court did not err in admitting the challenged evidence, and Fairley has not shown any substantial issue likely to result in a different outcome on appeal.

## 2.   The Court Appropriately Handled the Issue of Set-Aside Funds

Fairley next challenges this Court's handling of the issue of the set-aside funds that was the subject of trial testimony and was considered in relation to the appropriate jury instructions at the conclusion of trial. ECF #120 at 8-10.  Although Fairley disputes the instructions provided to the jurors, the jury was properly instructed using Fifth Circuit pattern instructions on the elements of Title 18, United States Code, Sections 371 and 641. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CRIMINAL 2.15 & 2.27.  These criminal statutes are commonly charged, and this Court is intimately familiar with the language of both statutes.  The defense offered flawed alternative instructions ostensibly related to a HUD regulation prior to the final charge conference.  Counsel for Fairley requested and was granted additional time to correct the proffered jury instructions.  The following morning yet another instruction relating to a different regulation was submitted.  The Court explained that defense counsel was free to make all of the arguments he wanted to make and to draw the jury's attention to any testimony which supported it.  The Court did not inhibit or forbid defense counsel from presenting his theory of the case; it just was not accepted or believed by the jury.

It has never been the government's contention that Fairley's Pinebelt CHDO could not use HOME Investment Partnership Program ("HOME") funds for overhead expenses. This Court recognized in its post-trial ruling that "[t]he record is replete with testimony regarding the ability of Fairley to have some percentage of his overhead paid from the HUD grant." ECF # 90 at 3.   In addition to the $98,000, which was the focus of the

8

indictment, another $18,000 in additional funds were specifically provided and used by Pinebelt for just those purposes.

The witness whom the defense repeatedly relies upon in making this assignment of error, Brent McDaniel, testified about all kinds of operating expenses on direct, but these were not submitted to the City of Hattiesburg or HUD as proof of work done or expenses incurred on either of the homes.  The government was not obligated to cross-examine every frivolous defense witness, but if McDaniel had been believed by the jury, the government's failure to cross-examine him could have proven damaging to the government's case.  The jury clearly did not give the witness any credence because to believe McDaniel's testimony would have resulted in the absurd and counter-intuitive outcome that Fairley's CHDO could have been paid in full for two separate HUD rehabilitations without having done any work on either of the properties.  This could not have been Congress's intent.

The defense mischaracterizes Special Agent Luker's testimony about the use of HOME funds. ECF #120 at 8-9.  Agent Luker told the defense that he gave Fairley credit for all of the receipts submitted by Pinebelt, no matter how suspicious or duplicative.  If Pinebelt had wished to document the work allegedly performed with other operating expenses, all it had to do was submit the expenses for consideration.  Fairley had plenty of time to do so.  The government's case did not rely upon Luker's testimony alone.  It also included the testimony of experienced HUD officials and a special agent of HUD OIG.  Defendant's arguments on this point are without merit.  Luker did not testify that *all* the money they received had to be used for direct expenditures.  Further, testimony

from two very experienced HUD witnesses confirmed the use of those funds and how those funds could be spent by the CHDO. The individual from HUD overseeing the project testified last and outlined the terms of the agreement that Pinebelt/Fairley were to follow.

What was abundantly clear is that the money that Fairley eventually claimed to have used to rehabilitate the homes had not been spent on the homes. However, Fairley had received HUD funds claiming to have already placed the claimed amount of money into each home.

It was only after Fairley realized that he would not be granted funding for the additional homes that he began to try to cover up what he had done and he and Fletcher began to have problems. Both knew that the HUD money was no longer flowing and that, without remedying the issues associated with the first two rehabilitations, the spigot could not be reopened. Without Fletcher being able to recoup what he had initially invested, the conspiracy was in jeopardy. The recordings chronicled how they tried to solve these nagging problems in order to advance the objectives of their conspiracy.

As this Court rightly recognized in its post-trial ruling: "Defendant sought to have non-project overhead count toward the project costs." ECF # 90 at 4. However: "The jury clearly heard the evidence and rejected Fairley's position." *Id*. Fairley has presented no substantial question of law or fact as to this issue that is likely to result in any different outcome on appeal. Thus, his motion for bail pending appeal is unwarranted.

### 3. The Court Acted Properly in Sentencing Fairley

At the outset, it must be emphasized that, even if the defendant were to succeed on appeal in attacking one or more of the enhancements of which he now complains, it would be of no avail to him in terms of reducing his ultimate sentence so as to justify his release on bail as authorized by Section 3143(b)(1)(B).[2] These sentencing issues offer no justification for granting bail. Of particular significance is that this Court said at the time of sentencing that, even if the Court was in error with its findings and calculations, the Court would have granted a variance to arrive at the same sentence.

Addressing the defendant's three sentencing guideline issues, the government submits that none of his complaints alone, or in combination, is helpful to the Court in ruling on this motion. The defendant cites several cases in support of the proposition that the government cannot rely solely on trial testimony to support a relevant conduct enhancement. ECF #120 at 11. Even acquitted conduct can form the basis of a relevant conduct enhancement so long as the court finds its existence by applying a preponderance of the evidence standard. *United States v Watts*, 519 U.S. 148, 156 (1997) (per curiam).

---

[2] As provided by statute, Fairley is required to show his appeal is likely to result in "a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). According to Fairley, if the Court of Appeals were to determine that the loss amount properly attributable to him was the $60,223 amount he says was proven at trial, his sentencing range would be 10-16 months. ECF #120 at 10 n.11. But this disregards that Fairley also was appropriately held accountable for engaging in conduct involving a charitable entity (PSR ¶ 93), use of sophisticated means (*id*.), and abuse of trust (*id.* ¶ 96)—each of which carries a two-level enhancement—as a result of which, even under Fairley's calculation, would yield a sentencing range of 27-33 months. With the average of approximately ten months from the filing of the notice of appeal until decision, Fairley cannot make the required showing. *See* http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/faqs/faqs.pdf?sfvrsn=16.

Similarly, uncharged relevant conduct can be relied upon by the court in determining the loss amount, even if it falls outside the applicable statute of limitations. *United States v. Rhine*, 583 F.3d 878, 886 (5th Cir. 2009). *See also United States v. Washington*, 168 F.3d 486, 1999 WL 25127 at *2 (5th Cir. 1999) (unpublished per curiam) ("The district court's findings regarding Washington's relevant conduct were supported by evidence presented at the trial.").

Here, there were documentary exhibits introduced at trial and referred to in the PSR sufficient to prove relevant conduct necessary for this Court to justify the enhancements used to calculate the defendant's sentence. In addition, Fairley's trial counsel developed testimony on cross-examination that was independently adequate to establish his "intended loss" calculation. Andrew Ellard's cross-examination, when considered in conjunction with the recording that Fletcher made of a meeting he had with Ellard, is just one example of the defense providing an ample basis for the Court to support its intended loss enhancement. There was a great deal of testimony about the additional contract, amendments to contracts, reasons the funding for the additional contract was not moving forward, and efforts made to remedy the problems with the first two rehabilitation projects. All of this testimony and the government and defense exhibits overwhelmingly supported the relevant conduct Fairley now wants to dispute.

If this sentence had occurred following a guilty plea, the government would have been obligated to sponsor additional proof in support of the enhancements. But given that the sentencing hearing took place following a lengthy jury trial and after a guilty plea and sentencing hearing of a co-defendant, the Court was in a unique position to correctly

identify and rule on appropriate enhancements based upon the trial testimony the Court heard that were also captured in the PSR.

The defendant's reliance (ECF #120 at 11-12) upon *United States v. Zuniga*, 720 F.3d 587 (5th Cir. 2013), is misplaced. The defendant suggests that this Court relied solely on the presentence report by stating: "The PSR is evidence. It's evidence before the court today." ECF #120 at 11 n.12. But this quote, taken out of context, does not mean that the Court did not also rely upon the trial exhibits and testimony over the course of the six-day trial. In fact, it is quite clear that the Court did not rely entirely on the PSR inasmuch as the PSR did not recommend a reduction in the additional contract amount used to calculate the "intended loss" figure by an amount of expenses likely to be incurred in carrying out the contract. This Court reduced the defendant's ultimate sentence by assuming that the CHDO would have had to infuse some money into the additional project. By applying the same ratio to the additional contract amount which was evident in the underlying conduct, the resulting guideline range was substantially reduced. Clearly, this Court did not rely as the trial judge did in *Zuniga,* on "bald conclusory statements" in the PSR.

Fairley's final assertion—that the loss figure should have been reduced by the fair market value of the property (ECF # 120 at 13)—is of no help to him in reducing the term of his sentence. As the Guidelines commentary states, "the court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1, application note 3(C). "The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to

13

appropriate deference." *Id.* The Guidelines commentary further directs that the "loss shall be reduced by … [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other person acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1, application note 3(E).

Here, HUD, the victim in this prosecution, did not receive any money back. The defendant is therefore not entitled to an offset. The defendant argued at sentencing that using the tax assessment as proof of the collateral value at the time of sentencing should have been sufficient proof to entitle him to an offset under U.S.S.G. § 2B1.1, application note 3(E). This is not appropriate for a number of reasons. First, this is not a fraudulent loan investigation and prosecution. Subparts (ii) and (iii) of the commentary addressing "Credits Against Loss" specifically relate to prosecutions of mortgage fraud or cases in which collateral is pledged. *See* U.S.S.G. § 2B1.1, application note 3(E)(ii) & (iii). HUD has no such security interest or mortgage in either of the two properties which were the subject of the prosecution. HUD has no collateral in the additional property which the defendant hoped to rehabilitate. There is no "privity of contract" between HUD and the defendant. Even if one argued that HUD had some recourse against the City of Hattiesburg, such an avenue would not be possible here under the peculiar facts of this case because the city worked in concert with the defendant in providing the HUD funds without appropriate documentation. In addition, the Mayor of Hattiesburg, a long-time friend of the defendant, testified on behalf of Fairley, and the mayor's participation was

discussed at length in the course of the conversations held between co-conspirators as reflected in recordings introduced at trial.

The only credit against loss which the defendant is entitled to receive as contemplated by the Guidelines commentary is the one that reduces the contract amount by the value of the "services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1, application note 3(E)(i). This Court not only reduced the "actual" loss by this amount, but also reduced the "intended" loss by the same ratio. There was no error in the Court's calculation of the loss amount. There is no credible basis to believe that the scheme would have been detected absent the investigation by HUD OIG and the subpoena power of the grand jury. There is no reason to believe that Fairley's appeal of his sentence, even if his loss amount was further reduced, would result in his eligibility for a sentence of probation or a sentence of such short duration as to entitle him to bail relief he seeks by filing this motion.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for bail pending appeal.

                                        Respectfully submitted,

                                        GREGORY K. DAVIS
                                        United States Attorney

By:   **_/s/ Jay T. Golden_**
        Jay T. Golden
        Mississippi Bar No. 4881
        *Assistant United States Attorney*
        1575 20th Avenue
        Gulfport, MS 39501
        (228) 563-1560
        Jay.Golden@usdoj.gov

        Abe McGlothin, Jr.
        Mississippi Bar No. 104247
        *Assistant United States Attorney*
        501 East Court Street, Suite 4.430
        Jackson, MS 39201

Dated: January 31, 2017                (601) 965-4480

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, I caused to be electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record.

                                         **s/ Jay T. Golden**
                                         Jay T. Golden
                                         *Assistant U.S. Attorney*